NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACY VANDERHOEF, Individually and On Behalf of All Others Similarly Situated, <br><br>         Plaintiffs, <br><br>   v. <br><br> CHINA AUTO LOGISTICS INC., TONG SHIPING, *et al.*, <br><br>         Defendants. | Civil Action No.: 18-cv-10174 <br><br><br> **OPINION** |

**CECCHI, District Judge.**

## I.    INTRODUCTION

This matter comes before Court on the motion to dismiss plaintiffs Zhengyu He, Harold Brooks Moss, and Andrew Pagliara's (collectively "Plaintiffs") First Amended class-action Complaint (ECF No. 17, "FAC"), filed by defendants[1] Tong Shiping, Cheng Weihong, and Wang Xinwei (the "Management Defendants"), and Lv Fuqi, Yang Lili, Bai Shaohua, and Howard Barth (the "Director Defendants") (collectively "Defendants").  ECF No. 93.  Defendants seek dismissal of the FAC pursuant to Fed. R. Civ. P. 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 (the "PSLRA").  *Id.*  Plaintiffs opposed the pending motion (ECF No. 94), and Defendants replied.  ECF No. 99.  The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, Defendants' motion to dismiss is denied.

---

[1] The FAC also includes claims against Defendant China Auto Logistics Inc.  *Id.*  This Court previously denied China Auto Logistics Inc.'s motion to dismiss pursuant to Rule 12(b)(6).  ECF No. 106.

## II.   <u>BACKGROUND</u>

Plaintiffs, along with the putative class, are persons and entities, who purchased publicly traded CALI securities between March 28, 2018, and September 5, 2018 (the "Class Period"). FAC at ¶ 1.  Plaintiffs allege that Defendants, current and former officers and directors of China Auto Logistics Inc. ("CALI"), failed to disclose related party transactions[2] that the Company conducted with various entities owned and controlled by the Company's executives and their families, in violation of Section 10(b), Rule 10b-5, and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiffs further aver that Defendants unlawfully failed to disclose that they leveraged these related party transactions to divert profits from CALI to its CEO, Shiping, his wife, Weihong, and their families, and subsequently interfered with an independent investigation launched by outside counsel concerning CALI's disclosure issues (the "Investigation").

CALI is principally in the business of selling and trading imported automobiles in the People's Republic of China.  FAC at ¶ 24.  In the Company's annual SEC report in 2016, CALI disclosed that its two largest revenue-generating customers were Tianjin Jing Dian Automobile Sales Information Ltd. Co. ("Jing Dian") and Tianjin Binhai International Automall Ltd. Co. ("Binhai").  *Id.* at ¶¶ 44, 87.  In the same report, CALI disclosed that its two "major" suppliers

---

[2] The SEC requires publicly traded companies to comply with Generally Accepted Accounting Principles ("GAAP") in public filings.  *See* § 13 of the Exchange Act; Rule 10-01(d) of Regulation S-X.  GAAP requires regulated companies to disclose all "material" related party transactions. SFAS No. 57 ¶ 2; 850–10–50–1.  Related party transactions include those between "an enterprise and its principal owners, management, or members of their immediate families" and those between a company and its "affiliates."  SFAS No. 57 ¶ 1; 850-10-05-3.  "Affiliates" include any company that is under common control or management with the public company.  *Id.* at ¶ 24(a), (b); 850-10-20.  "Immediate family" is defined as "[f]amily members whom a principal owner or a member of management might control or influence or by whom they might be controlled or influenced because of the family relationship." *Id.* at ¶ 24(c).

were Tianjin Shi Mao International Trading Ltd. Co. ("Shi Mao") and Tianjin Ying Zhi Jie International Logistics Ltd. Co. ("Ying Zhi Jie"). *Id.* at ¶ 47. Plaintiffs allege that CALI failed to disclose, however, that its dealings with Jing Dian, Binhai, Shi Mao, and Ying Zhi Jie constituted related party transactions[3] as these entities were controlled by family members of Shiping and Weihong, and shared addresses, officers, and directors with CALI and its operating subsidiaries. *Id.* at ¶¶ 25, 45–89,167. These operating subsidiaries include Tianjin Seashore New District Shisheng Business Trading Group Co. Ltd. ("Shisheng"), Tianjin Hengjia Port Logistics Corp. ("Hengjia"), and Tianjin Ganghui Information Technology Corp. ("Ganghui"). Shisheng, CALI's primary operating subsidiary, owns 98% of both Hengjia and Ganghui, which share the same business address. *Id.* Weihong served as a "supervisor" at Hengjia and co-founded Shisheng, where she served as Senior Vice President. *Id.* at ¶ 29.

Specifically, Plaintiffs allege that CALI maintained the following associations with Jing Dian, Binhai, Shi Mao, and Ying Zhi Jie, which were widely known by CALI executives:

- ***Jing Dian***: Jian Dian shared the same address as Shisheng, shared an executive with Shisheng and Shi Mao, and was operated by Ganghui. *Id.* at ¶ 46;

- ***Binhai***: Binhai shared the same address as Hengjia and Ganghui, shared the same supervisor, Cheng Tao (Weihong's and Shiping's nephew), with Hengjia and Ying Zhi Jie, shared a director, Lili, with CALI, and shared the same Chairman, Cheng Jun (Weihong's brother and Shiping's brother-in-law), with Ying Zhi Jie. *Id.* at ¶ 45. Plaintiffs also note that Binhai, which wholly owned Ying Zhi Jie, exclusively re-sold CALI's imported cars to entities owned and controlled by Weihong. *Id.* at ¶¶ 49–69;

- ***Shi Mao***: Shi Mao shared an executive with Jing Dian. *Id.* at ¶ 48; and

- ***Ying Zhi Jie***: Ying Zhi Jie was wholly owned Binhai, shared the same Chairman, Cheng Jun (Weihong's brother and Shiping's brother-in-law), with Binhai, and

---

[3] Plaintiffs allege that Defendants were aware of the SEC's reporting requirements with respect to related party transactions as CALI disclosed other business relationships as related party transactions during this same period. *Id.* at ¶ 103.

shared the same supervisor, Cheng Tao (Weihong's and Shiping's nephew), with Binhai and Hengjia. *Id.* at ¶ 49.

Consequently, Plaintiffs allege that Shiping and Xinwei committed actionable fraud when, in the same 2016 annual report, they certified that: (1) CALI's financial disclosures did "not contain any untrue statement [or a misleading omission] of a material fact," and (2) they had revealed any potential fraud involving "management or other employees who have a significant role in [CALI's] internal control over financial reporting . . . to the Company's auditor and Audit Committee." *Id.* at ¶ 101. Plaintiffs also note that Fuqi, Lili, Shaohua, and Barth executed CALI's financial disclosures within the same report. *Id.* at ¶ 100. Barth chaired CALI's Audit Committee, Fuqi served as member of the Company's Nominating and Corporate Governance Committee ("Governance Committee"), and Lili and Shaohua served as members of both CALI's Audit and Governance Committees. *Id.* at ¶¶ 30–34.

In addition, Plaintiffs allege that, during this same period, Defendants failed to disclose that the Company utilized these related party transactions to sell its inventory (imported cars) at below-market prices to entities owned and controlled by Shiping, Weihong, and their families. *Id.* at ¶¶ 51–69. Plaintiffs assert that those entities then resold the imported cars to consumers at market prices, reaping substantial profits for Shiping, Weihong, and their families. *Id.*

Months later, CALI's shareholders caught wind of the fraudulent scheme as, on April 2, 2018, the Company disclosed that it would be unable to timely file its 2017 annual report with the SEC due to "identified . . . material weakness[es] in internal controls and procedures over identifying and reporting certain relationships." *Id.* at ¶ 128. CALI added that it "expect[ed] to correct this material weakness by implementing additional procedures in the first half of 2018." *Id.* at ¶ 129. Days later, in support of these efforts, CALI's Board disclosed that it had retained independent counsel, DLA Piper, to conduct the Investigation regarding CALI's failing internal

controls.  *Id.* at ¶ 131.  In the same release, CALI assured its investors that it was "working diligently with its auditors and independent counsel" and "intend[ed] to cooperate fully with the Investigation."  *Id.* at ¶¶ 132–41.  CALI's share-price fell 19% following these disclosures.[4]

Subsequently, on July 17, 2018, CALI disclosed that Shiping and Xinwei had resigned from the Company following accusations from China's police force that they wrongfully accessed sensitive data from CALI's employees in an attempt to cover up their fraud.  *Id.* at ¶ 143.  NASDAQ de-listed CALI's stock from its exchange after learning this news, which resulted in the fall of CALI's stock price by over 70%.  *Id.* at ¶ 149.  10 days later, Barth disclosed that he had also resigned from CALI because "the active noncooperation of the Company ha[d] prevented the Audit Committee and its counsel from uncovering the evidence necessary to ascertain the truth or inaccuracy of the allegations [pertaining to the Investigation].  In particular, management . . . ha[d] prevented [them] from engaging in any efforts to collect physical and electronic evidence . . . or to communicate with . . . the Company's [officers and employees]."  *Id.* at ¶ 145.

One month later, CALI disclosed that its outside auditor and DLA Piper had resigned from their roles servicing the Company, and that the Company did "not believe that the Investigation [would] be completed."  *Id.* at ¶¶ 150–51.

---

[4] In light of CALI's falling share price, a CALI shareholder filed a Derivative Complaint (the "Derivative Lawsuit") against CALI in connection with the alleged undisclosed related party transactions.  *Id.* at ¶ 131.  While Defendants argue that Plaintiffs' claims must be dismissed because they are "inartfully" duplicative of the claims asserted in the Derivative Lawsuit (Defs. Br. at 32), the FAC alleges wholly distinct causes of action.

The Court also acknowledges that Plaintiffs moved to strike Exhibit One attached to Defendants' reply brief (ECF No. 99, Ex. 1), which represents a declaration filed in the Derivative Lawsuit by Eugene C. Cha, a board member at CALI.  ECF No. 100.  The Court takes judicial notice of this document, as it constitutes a record of another court, but "only to establish the fact of the litigation and actions of that court . . . [and not] for the truth of the matters stated in them."  *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 527 (D. Del. 2008) (citations omitted).

III.   **LEGAL STANDARD**

    a.   **Federal Rule of Civil Procedure 12(b)(6)**

      To survive dismissal under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citations omitted).   However, factual allegations must support a right to relief that is more than speculative.   *Twombly*, 550 U.S. at 555.   Indeed, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not suffice.   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 545, 557).   Alternatively, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   Ultimately, the party seeking dismissal under Rule 12(b)(6) bears the burden of demonstrating that no claim upon which relief may be granted has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

IV.   **DISCUSSION**[5]

    a.   **Count One**

      In Count One, Plaintiffs allege that Shiping and Xinwei violated Section 10(b) and Rule 10b-5 by failing to disclose: (1) the related party transactions; (2) the scheme to divert CALI's

---

[5] The Court has considered the anonymous accounts of several individuals formerly employed by CALI and its partners offered by Plaintiffs in the FAC as these accounts are "adequately particularized."   *In re Navient Corp. Sec. Litig.*, No. 17-8373, 2019 WL 7288881, at *8 (D.N.J. Dec. 30, 2019) ("If a complaint's confidential witness allegations are adequately particularized, a court will not dismiss them simply on account of their anonymity.") (citations omitted).

profits to Shiping, Weihong, and their families; and (3) their obstruction of the Investigation. Plaintiffs further allege that they suffered losses when, after CALI disclosed issues relating to the related party transactions, the Company's stock price fell.  In response, Shiping and Xinwei aver that Plaintiffs have failed to establish the scienter and loss causation elements under Section 10(b) and Rule 10b-5.[6]  ECF No. 93-1 ("Defs. Br.") at 13–26.

To state a viable claim for securities fraud under Section 10(b) and Rule 10b-5 of the Exchange Act, Plaintiffs must plead: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (citations omitted). Additionally, claims brought under Section 10(b) and Rule 10b-5 are subject to the heightened pleading standards of the PSLRA and Fed. R. Civ. P. 9(b), which require allegations of fraud to be stated with particularity.  15 U.S.C. § 78u-4(b).

To adequately plead scienter, "a complaint must state with particularity facts giving rise to a 'strong inference' that the defendants acted with intent to . . . defraud."  *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 95 (3d Cir. 2017).  A "strong inference" of scienter exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* (citations omitted).  To establish a "strong inference" of scienter, Plaintiffs must allege facts showing that *each* Defendant had "both motive and opportunity to commit fraud," or "circumstantial evidence of either reckless or conscious behavior."  *Id.* (citations omitted).  Notably, "[t]he inquiry is whether *all* of the facts alleged, taken

---

[6] Defendants concede that Plaintiffs have adequately pleaded the other elements of their securities fraud claim:  materiality, sufficient nexus, reliance, proximate causation, and damages.

collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).

Here, Plaintiffs allege that Shiping and Xinwei acted with scienter in connection with CALI's misleading disclosures as "these officers and [Shiping's] family members owned and controlled the [undisclosed] related parties at all relevant times, took steps to obstruct the internal investigation . . ., and resigned in connection with a police investigation into their cover up attempts." ECF No. 94 ("Pls. Br.") at 3. Further, while Xinwei may not have personally benefitted from the fraudulent scheme, Plaintiffs allege that she nevertheless served as a director of Shisheng, CALI's primary operating subsidiary, which maintained numerous ties with the related parties. FAC at ¶ 28.

Shiping and Xinwei, on the other hand, argue that Plaintiffs have failed to allege that they acted with any improper motive as they did not trade CALI stock during the Class Period, their mere positions as officers and directors at CALI are insufficient to impute knowledge of any wrongdoing, and their resignations from CALI do not alone constitute "strong circumstantial evidence of misbehavior." Defs. Br. at 13–26; ECF No. 99 ("Defs. Rep. Br.") at 6.

Nevertheless, considering "*all* the facts," the Court finds that Plaintiffs have adequately plead scienter. *Tellabs*, 551 U.S. at 310. First, Plaintiffs allege that Shiping and Xinwei knew of CALI's associations (including familial links) with the related parties. *See generally* FAC. Second, Plaintiffs allege that Shiping gained a "concrete and personal benefit" when CALI siphoned its profits to him through the related party transactions (FAC at ¶ 5). *See Duncan v. Vantage Corp.*, No. 18-288, 2019 WL 1349497, at *8 (D. Del. Mar. 26, 2019) (executive acted with scienter where he personally benefitted from a scheme that directed the company's funds to

an entity that he owned).  Third, Plaintiffs note that Shiping and Xinwei were aware of the SEC's reporting requirements concerning related party transactions, evidenced by the Company's prior disclosures of certain business relationships as related party transactions (FAC at ¶ 103–25).  *See Zagami v. Nat. Health Trends Corp.*, 540 F. Supp. 2d 705, 713 (N.D. Tex. 2008) (finding that a company's prior "repeated disclosure[s] . . . [of] related-party transactions" indicate that the company's executives were aware of the SEC's reporting requirements).  Fourth, Plaintiffs allege that Shiping and Xinwei actively obstructed the Investigation and misled the public regarding their intention to cooperate with DLA Piper and the Audit Committee (FAC at ¶ 138–40), and such "efforts to mask . . . violations of federal securities laws demonstrate[] a high degree of scienter." *SEC v. Desai*, 145 F. Supp. 3d 329, 337 (D.N.J. 2015), *aff'd*, 672 F. App'x 201 (3d Cir. 2016).

Although Shiping and Xinwei argue that they did not "cover up anything" with respect to the Investigation (Defs. Rep. Br. at 5), the most plausible inference—based on accusations made by Barth and China's police force—is that Shiping and Xinwei actively impeded the Investigation to conceal their fraud, including by wrongfully accessing their employees' data.  *See, e.g.*, FAC at ¶¶ 11, 12, 143, 145 (Barth: "management . . . has prevented [everyone] from engaging in any efforts to collect physical and electronic evidence.").

Moreover, the Court notes that while certain allegations—including those concerning CALI's GAAP violations, executive and auditor resignations, and that Shiping and Xinwei maintained c-suite positions at CALI—may not *alone* support an inference that these Defendants acted with scienter, such allegations, *in tandem*, do support such an inference.  *See Sun v. Han*, No. 15-703, 2015 WL 9304542, at *15–16 (D.N.J. Dec. 21, 2015) ("[All] of the facts alleged," including GAAP violations and outside auditor resignation, "taken collectively, give rise to a strong inference of scienter") (citations omitted).

Shiping and Xinwei also argue that Plaintiffs have failed to sufficiently allege loss causation as they have not "identif[ed] any actionable misrepresentation or omission that can be tied to the losses which Plaintiffs claim to have suffered, [as] the statements [identified] do not 'reveal' any fraudulent practices." Defs. Br. at 30. The Court disagrees with Shiping and Xinwei for the same reasons set forth in this Court's previous denial of CALI's motion to dismiss. ECF No. 105 at 8.

"One way to establish loss causation is by means of a corrective-disclosure theory." *Zhengyu He v. China Zenix Auto Int'l Ltd.*, No. 21-81553, 2020 WL 3169506, at *11 (D.N.J. June 12, 2020). Specifically, "[a]fter a misrepresentation has been made, a corrective disclosure reveals the falsity of the alleged misrepresentation, and introduces new information to the market, generally resulting in a price correction." *Id.* (citations omitted). However, while such a corrective disclosure "must at least relate back to the misrepresentation," it need not "precisely mirror" it. *Id.* ("[N]either a single complete disclosure nor a fact-for-fact disclosure of the relevant truth to the market is a necessary prerequisite to establishing loss causation.") (citations omitted). Instead, a plaintiff need only allege that the market was able to "infer" from the corrective disclosure that the misrepresentation at issue had occurred. *Id.* at *12. Further, evidence of such a market inference can be found where a company's stock price drops "precipitously" following a corrective disclosure. *Id.*

Here, as this Court previously found, "the [FAC] delineates company disclosures, alleges such disclosures revealed previously undisclosed information, and then cites to drops in CALI's stock price as a result." ECF No. 105 at 9 (citing FAC at ¶¶ 128–29). This is sufficient to plead

loss causation.[7]  *Id.*; *see also Semerenko v. Cendant Corp*, 223 F.3d 165, 184 (3d Cir. 2000) ("Where the claimed loss involves the purchase of a security at a price that is inflated due to an alleged [omission], there is a sufficient causal nexus between the loss and the alleged [omission] to satisfy the loss causation requirement.").

### b.  Count Two

In Count Two, Plaintiffs allege that each Defendant violated Section 20(a).  FAC at ¶¶ 176–81.  In response, Defendants argue that Plaintiffs' claim warrants dismissal as they fail to allege that: (1) CALI committed a primary violation of the Exchange Act (Section 10(b) and Rule 10b-5), or that (2) Defendants "controlled" CALI within the meaning of the Exchange Act.[8]  Defs. Br. at 33–35.

To state a claim under Section 20(a), Plaintiffs must demonstrate: (1) "a violation of the Exchange Act," and (2) "that the Individual Defendants were controlling persons of the corporation."  *Odeh v. Immunomedics, Inc.*, No. 18-17645, 2020 WL 4381924, at *8 (D.N.J. July 31, 2020) (citing 15 U.S.C. § 78t(a) and *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284, n.16 (3d Cir. 2006).  Plaintiffs have adequately pleaded each of these elements.

---

[7] In addition, given this Court's previous finding regarding scienter and loss causation, the law of the case doctrine precludes Plaintiffs' arguments.  ECF No. 105 at 6 (Plaintiffs adequately alleged securities fraud claim against CALI where the Court imputed the Management Defendants' conduct, including their states of mind, to CALI); *see also SEC v. Lucent*, No. 04-2315, 2006 WL 2168789, at *5 (D.N.J. June 20, 2006) ("Because this Court previously decided issues of scienter and pleading fraud with particularity as they related to [the Corporation by virtue of the CEO's imputed conduct], the Court will deny [the CEO's] motion to dismiss with regard to these issues.").

[8] Defendants additionally argue that Plaintiffs failed to plead the "culpable participation" element of their Section 20(a) claim.  ECF No. 99 at 2.  However, this culpable participation element "need not be pled to survive a motion to dismiss."  *China Zenix Auto Int'l Ltd*., 2020 WL 3169506, at *13 (D.N.J. June 12, 2020) ("[T]he 'overwhelming trend' is that culpable participation need not be pled to survive a motion to dismiss" on Section 20(a) claims) (citations omitted).

First, as this Court previously held, Plaintiffs have sufficiently alleged that CALI committed a primary violation of the Exchange Act under Section 10(b) and Rule 10b-5. ECF No. 105. Second, Plaintiffs have satisfactorily detailed that each Defendant was a "control person" of the Company in that they exercised "decision-making power" over its business activities. *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 907 (E.D. Pa. 2018) (describing "control person" test). Specifically, Plaintiffs allege that the Management Defendants directed the Company's day-to-day operations and were privy to confidential proprietary information concerning the Company's financials. *See generally* FAC; *see also Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, No. 00-5965, 2005 WL 1365465, at *15 (D.N.J. June 7, 2005) (citations omitted) (executives constituted "control persons" where they "directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest level, and were privy to confidential proprietary information concerning the Company and its business, operations") (citations omitted). Further, Plaintiffs allege that Director Defendants maintained control over the Company's SEC filings, including by certifying CALI's 2016 annual report. FAC at ¶ 100; *see also China Zenix*, 2020 WL 3169506, at *13 (individuals with "control over the Company's SEC filings . . . easily place[] them within the definition of control persons") (citations omitted); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 05-232, 2007 WL 81937, at *12 (E.D. Pa. Jan. 9, 2007) ("Allegations that a director signed a fraudulent SEC filing and was in a position to exercise control over the primary violator are sufficient to withstand a motion to dismiss.").

Accordingly, Plaintiffs have asserted a cognizable Section 20(a) claim against each Defendant.

## V.    <u>**CONCLUSION**</u>

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 93) is denied.  An appropriate Order accompanies this Opinion.

**DATED**:  July 30, 2021

_____

**CLAIRE C. CECCHI, U.S.D.J.**